## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS

Joseph Robert Casper                                                    **Plaintiff**

v.                          **No. 1:13–CV–118-DPM-HDY**

Carolyn W. Colvin, Acting Commissioner,
Social Security Administration                                **Defendant**

### Instructions for Recommended Disposition

The following recommended disposition will be sent to U.S. District Judge D.

Price Marshall.  A party to this dispute may file and serve written objections to this

recommendation.  An objection must be specific and state the factual and/or legal basis

for the objection.  An objection to a factual finding must identify the finding and the

evidence supporting the objection.  Objections must be filed with the clerk of the court

no later than 14 days from the date of this recommendation.[1]  Failing to object within 14

days may waive the right to appeal questions of fact.[2]  An objecting  party who seeks to

submit new, different, or additional evidence, or to obtain a hearing for that purpose,

must address the following matters as part of written objections: (1) why the record

before the magistrate judge was inadequate, (2) why the evidence was not presented to

the magistrate judge, and (3) details and/or copies of any testimony and/or documents

---

[1]28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

[2]*Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (failure to file objections
waives right to de novo review and to appeal magistrate judge's findings of fact).

to be proffered at a hearing.  Based on this submission, Judge Marshall will determine the need for a hearing.

### Recommended Disposition

Joseph Robert Casper seeks judicial review of the denial of his second application for disability insurance benefits and supplemental security income.[3]  In the past, Casper worked as a long-distance truck driver.[4]  According to Casper, he hurt his right elbow in 2004, while sliding the tandems of a trailer.[5]  Casper continue to drive, teaming up with his wife, until February 2010, when he says he could no longer shift gears due to right elbow pain.[6]

Casper applied for disability benefits at that time, but the Commissioner's ALJ denied the application.[7]  Because the first  application was denied on March 7, 2011, this case considers whether Casper has been disabled since March 8, 2011.[8]  Although

---

[3]SSA record at pp. 113 & 120.

[4]*Id*. at p. 140.

[5]*Id*. at pp. 32 & 39.  Sliding the tandems allows a driver to slide the trailer box back and forth on slider rails to distribute the weight of a load over trailer axles.

[6]*Id*. at pp. 33 & 311.

[7]*See id.* at pp. 155.  *See also Casper v. Astrue*, Cause No. 1:11CV13JTR (E.D. Ark. 2012) (affirming the denial of benefits).

[8]*Hulsey v. Astrue*, 622 F.3d 917, 924 (8th Cir. 2010) ("The law-of-the-case doctrine generally prevents relitigation of an issue previously resolved, and requires courts to adhere to decisions rendered in earlier proceedings. This doctrine applies to

Casper complained about depression and right knee pain, his primary reason for disability is right elbow pain.  He insists he experiences such severe pain that he cannot work.

**The Commissioner's decision**.  After considering the application, the Commissioner's ALJ determined Casper has severe impairments — chronic right elbow pain, right knee pain, and depression[9] — but he can do some light work.[10]  Because a vocational expert identified available work for a person with Casper's limitations,[11] the ALJ determined Casper is not disabled and denied the application.[12]

After the Commissioner's Appeals Council denied a request for review,[13] the ALJ's decision became a final decision for judicial review.[14]  Casper filed this case to

---

administrative agencies on remand."); *Brachtel v. Apfel*, 132 F.3d 417, 419 (8th Cir. 1997) ("The law of the case doctrine prevents the relitigation of a settled issue in a case and requires courts to adhere to decisions made in earlier proceedings...;" the doctrine applies to administrative decisions).  The references to the onset date for this case refers to March 28, 2011," but the record indicates that date was a mistake, because it's clear the onset date was based on the denial of the first application.

[9]SSA record at p. 13.

[10]*Id.* at p. 15.

[11]*Id.* at pp. 47-48.

[12]*Id.* at p. 22.

[13]*Id.* at p. 1.

[14]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating, "the Social Security Act precludes general federal subject matter jurisdiction until administrative

challenge the decision.[15]  In reviewing the decision, the court must determine whether

substantial evidence supports the decision and whether the ALJ made a legal error.[16]

This recommendation explains why substantial evidence supports the decision and why

the ALJ made no legal error.

 **Casper's allegations**.  Although Casper maintains depression and right-knee

pain impair his ability to work, his argument focuses on his right elbow.  He says he

meets listing 1.02 due to limitation in the right arm.  He contends chronic pain in the

right elbow prevents him from working.  For these reasons, he maintains substantial

evidence does not support the ALJ's decision.[17]

 **Applicable legal principles**.  For substantial evidence to exist, a reasonable mind

must accept the evidence as adequate to show Casper can do some light work.[18]  "Light

_____

remedies have been exhausted" and explaining that the Commissioner's appeal
procedure permits claimants to appeal only final decisions).

 [15]Docket entry # 1.

 [16]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the
Commissioner's findings are supported by substantial evidence and whether the
Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187
(8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant
disability benefits if the decision is not based on legal error and if there is substantial
evidence in the record as a whole to support the conclusion that the claimant was not
disabled.").

 [17]Docket entry # 9.

 [18]*See Britton v. Sullivan*, 908 F.2d 328, 330 (8th Cir. 1990) ("Substantial evidence
'means such relevant evidence as a reasonable mind might accept as adequate to

4

work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds."[19]  The ALJ placed the following limitations on light work: (1) right dominant arm used as an assistive device due to right elbow pain, and (2) work involving incidental interpersonal contact, tasks learned and performed by rote, few variables, little independent judgment, and simple, direct, concrete supervision.  Because the latter limitation isn't seriously debated, the question before the court is whether a reasonable mind would accept the evidence as adequate to show Casper can do work with a limited use of the right arm.[20]

   **Whether substantial evidence exists**.  According to Casper, he experiences constant, severe, monster pain that prevents him from working and enjoying life.  He testified that three orthopedic surgeons recommend an elbow replacement because his elbow has deteriorated.[21]  He says he takes so much pain medication that it is illegal for him to drive.[22]  Although he testified that he only drives when he has to,[23] he helps his

---

support a conclusion.'") (internal citation omitted).

   [19]20 C.F.R. §§ 404.1567(b) & 416.967(b).

   [20]*Slusser v. Astrue,* 557 F.3d 923, 925 (8th Cir. 2009).

   [21]SSA record at p. 39.

   [22]*Id*. at p. 167.

   [23]*Id*. at p. 34.

brother drive a van.[24]  The problem with Casper's claim is that a claimant must prove

disability with medical evidence; allegations are not enough to prove disability.[25]

Medical evidence.  By the time the first application was denied, three orthopedic

surgeons had examined Casper's right elbow.  Each surgeon diagnosed the same

condition — osteochondritis dissecans (OCD).[26]  OCD involves the breakdown of

cartilage, and sometimes the underlying bone, in a joint like the elbow.[27]  The condition

occurs most often in children and adolescents who play sports, but it also occurs in

adults.[28]  The condition is characterized by pain, intermittent swelling, and periodic loss

---

[24]Docket entry # 1 (reporting income from helping his brother with van service).

[25]42 U.S.C. § 423 (d)(5(A) ("An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability…; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment…which could reasonably be expected to produce the pain or other symptoms alleged and which…would lead to a conclusion that the individual is under a disability"); 20 C.F.R. §§ 404.1508 & 416.908 ("A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms.").

[26]*See* SSA record at pp. 278-79, 286 & 290-92.

[27]4 Attorneys' Dictionary of Med. 84864 ("Inflammation of bone and cartilage resulting in detachment of pieces of bone and cartilage which fall into a joint, especially the knee joint or shoulder joint.").

[28]Kenneth Fine, *Osteochodritis Dissecans of the Elbow*, Sports Med. Update, Nov./Dec. 2012, at 2, 3-4; Felix H. Savoie, *Osteochondritis Dissecans of the Elbow*, 16 Operative Techniques in Sports Med. 187, 187-88 (Oct. 2008).

of motion.[29]  In advanced cases, a fragment of cartilage may separate from the bone and

float around the elbow joint.  "Surgical intervention may be needed in some cases of

[OCD] to remove abnormal bone fragments in a joint."[30]

In Casper's case, diagnostic imaging confirmed the presence of OCD, but no

loose fragments.[31]  Three orthopedic surgeons recommended the same treatment —

nonsteroidal anti-inflammatory drugs.[32]  According to the second surgeon, diagnostic

findings do not support Casper's complaints about severe pain; the surgeon saw

nothing preventing Casper from engaging in at least limited activities.[33]

The third surgeon characterized Casper's OCD as "stable."[34]  This

characterization is particularly probative because it flowed from an exam conducted

three weeks before the ALJ denied the first application.  Ten weeks after the exam,

---

[29]*Id.*

[30]Victor Leipzig, 4 The Gale Encyclopedia of Med. 3186 (4th ed.).

[31]SSA record at p. 272 (MRI showing abnormal bone change in capitellum consistent with osteochondritis dissecans).  *See also* p. 286 (xrays showed well maintained joint space of radiocapitellar joint and olecranon; some slight peaking of coronoid process, but otherwise no significant degenerative changes; MRI showed increased signal in distal capitellum, possibly indicative of ostechondritis dissecans).

[32]To the extent Casper relies on the side effects of narcotic pain medication, none of the orthopedic surgeons recommended narcotic pain medication.  *See id.* at p. 286.

[33]*Id.* at p. 286.

[34]*Id.* at p. 292 (finding no tenderness or swelling, full painless range of motion in all planes, full muscle strength, and no joint instability).

Casper reapplied.  Despite reporting improvement from acupuncture, he claimed his

right elbow prevents all work.[35]  Alleging unbearable right elbow pain, while reporting

improvement, weighs against Casper's credibility.[36]

A few months after the second application — during a mental diagnostic exam

— Casper described his pain as so severe that he wants to kill himself, but the

psychological examiner observed no obvious signs of pain; Casper was not guarded in

moving his arm.[37]

Patients with OCD usually improve with conservative treatment, like

nonsteroidal anti-inflammatory drugs and discontinuing the activity causing pain.  Few

require surgery.  The orthopedic surgeons' treatment notes contradict Casper's

testimony about needing an elbow replacement.  Diagnostic imaging shows no loose

fragments.

More recently, Casper received treatment from a pain specialist.  The pain

specialist administered stellate ganglion blocks to block nerves going from the neck to

---

[35]*Id*. at pp. 374.

[36]*Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001) ("The ALJ may discount complaints of pain if they are inconsistent with the evidence as a whole."); *Partee v. Astrue*, 638 F.3d 860, 865 (8th Cir. 2011) ("The ALJ may discredit a claimant based on inconsistencies in the evidence.").

[37]SSA record at pp. 310-16.

the arms.  Casper reported improvement.[38]

"An impairment which can be controlled by treatment or medication is not considered disabling."[39]  Treatment may not resolve all of Casper's right-elbow pain — his symptoms wax and wane — but the evidence on the record as a whole does not support disabling pain.  No serious argument exists that Casper meets listing 1.02 because there are no problems with Casper's left arm.  To the extent Casper experiences right-elbow pain, the ALJ required work requiring limited use of the right arm.  A reasonable mind would accept evidence as adequate to support the determination that Casper can do some light work, because the medical evidence shows right-elbow pain waxes and wanes, right-elbow pain can be controlled with treatment, and the ALJ limited use of the right arm.

Vocational evidence.  The ALJ asked a vocational expert about available light work involving limited use of the right arm.  The vocational expert identified garment bagger and sub-assembler as representative jobs.[40]  Casper complains that these jobs require repetitive use of the right arm,[41] but the ALJ asked specifically about the use of the right dominant arm as an assistive device.  Nothing suggests the vocational expert

---

[38]*Id*. at pp. 412-20.

[39]*Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir. 2002).

[40]*Id*. at pp. 47-48.

[41]Docket entry # 9, p. 4.

disregarded the limitation.  A reasonable mind would accept the vocational evidence as adequate to show work exists that Casper can do regardless of whether such work exists where he lives, whether a job vacancy exists, or whether he would be hired if he applied for work.[42]  Because such work exists, Casper is not disabled under social security disability law.

**Conclusion and recommendation**.  Substantial evidence supports the ALJ's decision.  The ALJ made no legal error.  For these reasons, the undersigned magistrate judge recommends DENYING Casper's request for relief (docket entry #2) and AFFIRMING the Commissioner's decision.

It is so ordered this __4__ day of August, 2014.

_____
United States Magistrate Judge

---

[42]42 U.S.C. § 1382c(a)(3)(B) (defining disability under social security disability law).